# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW J. SIMSO, III, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:06cv301 (PCD) |
| | : | |
| STATE OF CONNECTICUT, | : | |
|     Defendant. | : | |

## RULING ON MOTION TO DISMISS

Plaintiff Andrew J. Simso, moving *pro se*, initiated this action seeking money damages and declaratory relief from the State of Connecticut (the "State") for alleged improprieties in dealing with his 1988 complaint to the State Department of Motor Vehicles (the "DMV"). Defendant State of Connecticut moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint. For the reasons stated herein, Defendant's Motion to Dismiss [Doc. No. 7] is **granted**.

## I.    BACKGROUND

The facts, as found by Connecticut Superior Court Judge Sheldon in ruling on the State of Connecticut's motion to dismiss in <u>Simso v. State</u>, No. CV020819172S, 2003 Conn. Super. LEXIS 996, *6-17 (Conn. Super. Ct. Apr. 7, 2003), are as follows.[1]

Plaintiff purchased a used 1981 Ford pickup truck from Joseph LoStocco, the owner of

---

[1]    Generally, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court accepts the facts alleged in the plaintiff's complaint as true. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). The Court adopts the state court's version of facts here only because they do not conflict with the allegations in Plaintiff's Complaint and are clearer, more comprehensive and more organized than those set forth in Plaintiff's Complaint, and Plaintiff does not object to the Court's reliance on this version of the facts. Moreover, the State also moves to dismiss pursuant to Rule 12(b)(1), in which case a court is permitted to refer to evidence outside the pleadings. <u>See</u> <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). Additional facts alleged by Plaintiff will be included where necessary.

Lostocco Motors, d/b/a Ralph's Auto Sales ("Ralph's"), a licensed used car dealer in Danbury, Connecticut, on or about January 7, 1988.  The total purchase price for the truck was $4,837.50, including taxes.  The truck developed problems that Ralph's failed to properly address,[2] leading Plaintiff to take two separate courses of action. (See Compl. 2-3.)  First, Plaintiff filed a consumer complaint against Ralph's with the DMV on February 9, 1988. (See Compl. 3.)  Second, Plaintiff filed suit against Ralph's in the Danbury Superior Court on September 13, 1989, entitled Andrew Simso, III v. Ralph LoStocco d/b/a Ralph's Auto Sales, Docket No. CV 89-00299603S ("the LoStocco Action").

In response to Plaintiff's complaint, the DMV conducted an investigation which led it to conclude that there were reasonable grounds to believe that Ralph's had violated State law in connection with the sale of the truck.  Accordingly, the DMV initiated an administrative enforcement proceeding against Ralph's, pursuant to Connecticut General Statutes § 14-64, which was ultimately docketed as DMV Case No. 91/2503.  On August 15, 1991, the DMV sent Ralph's a notice to inform it that an administrative hearing would be held on September 5, 1991, in accordance with the contested case provisions of the Uniform Administrative Procedures Act ("UAPA"), Connecticut General Statutes §§ 4-177 through 4-182, to determine if Ralph's had violated State law by allowing Plaintiff to operate a vehicle which it knew or should have known

---

[2]  According to Plaintiff, the truck broke down on the day it was purchased, shortly after he drove away from the lot.  He discovered that the engine installed in the 1981 truck was not one originally sold with the truck, but was a defective engine last produced for use in the 1974 model year.  The truck was also missing a catalytic converter, had a defective exhaust system and/or defective equipment, and the mileage had been falsified at the time of sale. (Compl. 2.)  In response to Plaintiff's complaints, LoStocco installed a second engine, which also proved to be defective and not in compliance with federal and state emission control standards. (Id. at 3.)  The second engine's emissions system was dismantled, missing, and inoperative, and the engine's identification numbers were missing. (Id.)  Over the years, Plaintiff has discovered a number of other problematic features, including apparent odometer tampering and failure to disclose that the truck had been in a collision. (Id.)

not to be in compliance with State emission control standards.  The notice advised Ralph's that

the hearing could result in the suspension or revocation of its dealer's license or such other

administrative action as might be appropriate.  Plaintiff was also sent a copy of the notice of

hearing.

     The hearing was rescheduled—with notice to Plaintiff—to November 6, 1991.  On that

date, the State and Ralph's entered into settlement negotiations, which resulted in a Consent

Agreement, signed by Ralph's and the DMV, under which Ralph's was required to take certain

remedial actions with respect to Plaintiff's truck.  Plaintiff neither participated in these settlement

negotiations nor signed the Consent Agreement to which they led. Plaintiff later contacted the

DMV to express his strong disagreement with the Consent Agreement and requested,

unsuccessfully, that the DMV rescind it.  Plaintiff did not seek judicial review of the Consent

Agreement under the administrative appeal provisions of the UAPA. See Conn. Gen. Stat. §

4-183.

     While the administrative enforcement proceeding was pending before the DMV, Plaintiff

separately prosecuted the LoStocco action against Ralph's in an effort to rescind the sale of the

pickup truck and to recover money damages for his resulting financial losses. The case was tried

before an attorney trial referee, who found for Plaintiff, awarding him $1,684.75 in money

damages, but declining to order rescission of the sale.  This decision was approved by the

Honorable Howard J. Moraghan, who rendered judgment thereon on August 17, 1993.

Thereafter, Ralph's paid Plaintiff $1,684.75 in money damages and received a satisfaction of

judgment from Plaintiff's then-attorney which expressly "releas[ed Ralph's] from any further

liability on the claim."[3]

Notwithstanding Ralph's payment of the judgment against it in the LoStocco action and Plaintiff's failure to appeal from the final decision of the DMV in its administrative enforcement proceeding against Ralph's, Plaintiff remained dissatisfied with the way in which the latter proceeding had been handled by the DMV and its attorneys.  Accordingly, he filed two lawsuits. The first, entitled <u>Andrew J. Simso, III v. Jose O. Salinas</u>, Docket No. CV 97-0573175S ("the Salinas Action"), was a mandamus action, filed in the Hartford Superior Court, in which Plaintiff sought to vacate the Consent Agreement and Order which ended the administrative enforcement proceeding and to compel the DMV to hold a hearing in that proceeding. The second, entitled <u>Andrew J. Simso, III v. Simon Hobbs, et al.</u>, Docket No. CV 98-0579788S ("the Hobbs Action"), was an ordinary civil action for money damages, also filed in the Hartford Superior Court, in which Plaintiff sought to recover from several individual DMV employees for alleged misconduct in handling his consumer complaint and resolving the administrative enforcement proceeding by the Consent Agreement.

The Hobbs action was resolved in favor of the defendant DMV employees on September

---

[3]  In the Salinas action, the court noted Plaintiff's claim that he never accepted the check from his attorney in the LoStocco action.  According to the court, although Plaintiff prevailed, at least in part, in the LoStocco action, he claimed that he instructed his attorney to appeal. The attorney did not appeal, after which Plaintiff refused to accept his portion of the proceeds and filed a grievance against the attorney. The attorney apparently prevailed on the grievance. <u>Simso v. Salinas</u>, No. CV 97573175S, 1999 Conn. Super. LEXIS 2671, *2 n.1 (Conn. Super. Ct. Sept. 27, 1999).

In the Memorandum of Decision in that same case, after trial, the court wrote: "That same year Simso sued Ralph LoStocco d/b/a Ralph's Auto Sales. Judgment in favor of Simso entered in that civil action on August 17, 1993 with an award of $1,684.75, $950.00 of which represented the reasonable value of a new motor. To this date the check issued in that case has not been negotiated by Simso who had wanted his attorney to appeal the decision. When his attorney failed to do so within the requisite time, Simso terminated his attorney's representation." <u>Simso v. Salinas</u>, No. CV 97573175S, 2001 Conn. Super. LEXIS 373, *3 (Conn. Super. Ct. Jan. 30, 2001)

27, 1999 by the granting of their motion for summary judgment based on the applicable statute of limitations and the defense of sovereign immunity. The Salinas action, by contrast, was resolved in favor of Plaintiff after a trial on the merits before the Honorable Mary R. Hennessey.

In her Memorandum of Decision dated January 30, 2001, Judge Hennessey ordered that the Consent Agreement and Order in the administrative enforcement proceeding be vacated, and that the DMV was "to pick up where it left off before undertaking the settlement discussion of November 16 [sic], 1991, which culminated in the consent decree, that is, ready to hold a contested hearing and to proceed according to the rules and regulations promulgated by DMV for such contested hearings." Simso v. Salinas, No. CV970573175, 2001 Conn. Super. LEXIS 373, *14-15 (Conn. Super. Ct. Jan. 30, 2001). Later, however, in response to the DMV's request for clarification of this ruling, Judge Hennessey wrote that she was "not ordering the [DMV] to hold a contested hearing," but "vacated a consent order" and "in effect reopened a 1991 file," and thus ordered the DMV to act upon the file "in a manner consistent with the [DMV] rules and regulations." Simso v. Salinas, No. CV970573175, 2001 Conn. Super. LEXIS 614, *1-2 (Conn. Super. Ct. Feb. 22, 2001).  The DMV did not appeal from the decision, as clarified.  Plaintiff, however, did appeal from that decision, and the Appellate Court dismissed his appeal as untimely on July 11, 2001.

On February 10, 2001, shortly before Judge Hennessey clarified her decision in the Salinas action, Plaintiff requested intervenor status in the reopened administrative enforcement proceeding and requested that the DMV conduct a hearing in that case.  In response, the Commissioner granted Plaintiff's request for intervenor status but denied his request for a hearing.  Shortly thereafter, upon reviewing the existing administrative record, the Commissioner

issued a written decision dismissing that proceeding for the following reasons:

> First, the licensee who is the respondent in Case No. 91/2503 and whose dealership sold you the pickup truck, Ralph LoStocco, is dead and his license has terminated. Obviously, DMV cannot suspend or revoke a license that no longer exists. Mangels v. Commissioner of Motor Vehicles, 40 Conn.Sup. 226, 229, 487 A.2d 1121 (1984) ("a licensee holds a license"). Second, you have already litigated to judgment the issue of the monetary injury that you suffered as a result of the sale of the truck and you were awarded damages. Andrew Simso, III v. Ralph LoStocco d/b/a Ralph's Auto Sales. In other words, you have been compensated for the loss sustained by reason of the acts of the licensee which constitute the grounds for the contested case proceeding in Case No. 91/2503.

Simso v. State, No. CV020819172S, 2003 Conn. Super. LEXIS 996, *13 (Conn. Super. Ct. Apr. 7, 2003).  Although the Commissioner's final decision was mailed to Plaintiff on March 20, 2001, Plaintiff never appealed from that decision, as permitted by the UAPA. See Conn. Gen. Stat. § 4-183.  Instead, Plaintiff wrote a letter to the Commissioner in which he repeated his complaints about the DMV's handling of his consumer complaint and objected to the Commissioner's dismissal of the reopened administrative enforcement proceeding without a hearing.  Treating the letter as a request for reconsideration under Connecticut General Statutes § 4-181a, the Commissioner responded to it in writing, and restated the basis for his March 20, 2001 order of dismissal.

Notwithstanding the rejection of his request for reconsideration, Plaintiff still did not appeal from the Commissioner's final decision, but wrote further letters to the Commissioner in which he restated his earlier arguments.  Ultimately, on May 11, 2001, the Commissioner wrote a letter to Plaintiff explaining to him that the matter was closed and that no further action would be taken:

> With all due respect, I believe that we have reached the point where you are simply beating the proverbial dead horse in this matter. Your latest correspondence

6

essentially rehashes the arguments presented in your letters of February 10th and March 28th, 2001. These arguments were carefully considered as part of my decision to dismiss the contested case and to deny your petition for reconsideration. At this point, I see no useful purpose to be served in continuing to debate the matter, and I do not intend to do so.

On March 20, 2001, the DMV mailed to you the final decision in Ralph's Auto Sales, DMV Case No. 91/2503. You of course were not obligated to agree with the decision. On the contrary, if you believed that you were aggrieved by the final decision and that the decision was contrary to law, you had the opportunity to seek judicial review through an appeal pursuant to Section 4-183 of the Connecticut General Statutes. However, you chose not to file an appeal. Again, that is your prerogative—as it was your prerogative not to file a complaint against LoStocco Motors with the DMV in 1988, or not to bring a lawsuit against LoStocco Motors in the Superior Court at the time you were suing Ralph's Auto Sales.

I regret that you had an unpleasant experience with DMV in connection with the investigation and prosecution of your consumer complaint against Ralph's Auto Sales. Nevertheless, there comes a point when one must move on and stop dwelling on past events, especially when no practical relief can be provided by DMV under the changed circumstances since you purchased the used truck some 13 years ago. Again, I consider this matter closed.

Simso v. State, No. CV020819172S, 2003 Conn. Super. LEXIS 996, *14-16 (Conn. Super. Ct. Apr. 7, 2003); (DeFilippo Letter, May 11, 2001, Ex. J to Def.'s Mot. Dismiss).

Shortly before Judge Hennessey rendered her decision in the Salinas action, Plaintiff sought to cure one of the defects which had led to the granting of summary judgment in the Hobbs action by seeking permission from the Claims Commissioner to sue the State for alleged improper handling of the complaint about his truck. The Claims Commissioner dismissed the claim "for lack of jurisdiction" in a short-form order dated November 9, 2000. Simso v. State, No. CV020819172S, 2003 Conn. Super. LEXIS 996, *16 (Conn. Super. Ct. Apr. 7, 2003) (citing Simso v. State of Connecticut, File No. 18078). Two years later, the Claims Commissioner denied a second request by Plaintiff for permission to sue the State. In his two-page

memorandum of decision dated September 27, 2002, the Claims Commissioner explained that permission to sue could not be granted because Plaintiff had failed to file his claim within the one-year time limit established by Connecticut General Statutes § 4-148(a). (See Claims Comm'r Mem., Sept. 27, 2002, Ex. G to Def.'s Mot. Dismiss.)  According to Judge Sheldon, Plaintiff never obtained permission from the Connecticut General Assembly to extend the one-year deadline for requesting permission from the Claims Commissioner to sue the State, as permitted by Connecticut General Statutes § 4-148(b). Simso v. State, No. CV020819172S, 2003 Conn. Super. LEXIS 996, *17 (Conn. Super. Ct. Apr. 7, 2003).

On or about August 14, 2002, Plaintiff filed suit against the State in Connecticut Superior Court, seeking money damages and declaratory relief "in connection with the State's decade-long handling of certain administrative and judicial proceedings arising from his January 1988 purchase of a defective 1981 Ford pickup truck from a licensed used car dealer in Danbury, Connecticut." Simso v. State, No. CV020819172S, 2003 Conn. Super. LEXIS 996, *1 (Conn. Super. Ct. Apr. 7, 2003).  In this suit, entitled Simso v. State, Docket No. CV020819172S, Judge Sheldon granted the State's motion to dismiss, holding that Plaintiff's claims were barred by the doctrine of sovereign immunity. See id. at *53.  Plaintiff did not appeal that decision, but filed suit against the State in this Court on March 1, 2006, also seeking money damages and declaratory relief.

## II.    STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). A

8

complaint should not be dismissed under Rule 12(b) "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see also Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Stores Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984)). As such, "[t]he issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence in support of his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

Defendant is moving to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  When a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other bases, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. V. Alabama Ins. Guaranty Ass'n., 896 F.2d 674, 678 (2d Cir. 1990).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. See Fed. R. Civ. P. 12(b)(1).  Plaintiff, as the party asserting subject matter jurisdiction, has the burden of establishing by a preponderance of the evidence that it exists, Malik v. Meissner, 82 F.3d 560,

9

562 (2d Cir. 1996), and the court should not draw argumentative inferences in his favor.  Atlantic

Mutual Ins. Co. v. Balfour MacLaine Int'l, 968 F.2d 196, 198 (2d Cir. 1992).  Unlike with a Rule

12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction

may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d

Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)); see

also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (in

resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact

issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold

an evidentiary hearing")

Where, as here, a plaintiff is proceeding *pro se*, this Court "read[s] his papers liberally,

interpreting them 'to raise the strongest arguments that they suggest.'" Bennett v. Goord, 343

F.3d 133, 137 (2d Cir. 2003) (quoting McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)).

## III.   DISCUSSION

Plaintiff filed the instant action in the District Court for the District of Connecticut on

March 1, 2006, seeking a declaratory judgment in the form of an official declaration by this

Court regarding the legality of the actions taken by the State, as to whether it has the right and/or

discretion to use its authority for the following actions against a citizen of the State in an attempt

to deny him equal protection of the law through due process:

> 1) To protect and defend acts of intentional tort to criminally defraud a citizen out of
> a vehicle of fair market value in compliance with mandated federal and state laws,
> by state employees and officials, override its duty to act in the public interest to
> protect its citizens from governmental corruption?
>
> 2) To deny a citizen, who files a formal complaint in which any decision made would
> greatly and specifically affect the citizen, party status? Doing so without any

notification to the complainant by any law that stipulates a person who submits a formal complaint, in which they are the party to the complaint, as the complainant, has to file a separate action to gain party status to their own complaint?

3) To refuse to investigate, address or even acknowledge evidence supported genuine material issues of fact, such as the results of their own investigation and verifiable documentation submitted by the plaintiff, in conflict with their decisions?

4) To refuse to address and/or hide the fact that DMV Officials unlawfully removed documents substantially supporting the plaintiff's complaints from DMV files?

5) To violate a person's right to due process by issuing and deceitfully upholding a Consent Agreement and Order that could not be complied with as written? An order that they had received notification of and admitted in a federal investigation could not be complied with or enforced unless the engine was identified?

6) To exempt itself from falling under the guidelines set forth in the Connecticut Practice Book when taking action against a person who files an action against the state?

7) To refuse to accept duly authorized subpoenas delivered in accordance with the law, directing them to present their defendant clients?

8) To refuse to present their client before the court knowing a subpoena had been issued for his appearance?

9) To refuse to take action to assure their state client adhered to a court ordered subpoena?

10) To use unprofessional conduct against a member of the public as a pro se, by refusing to respond to their letters in reference to court issues?

11) To use unethical practices in violation of the publics right to equal protection of the law through due process?

12) To force a consumer to take court action against a dealer/repairer licensed by and under the jurisdiction of DMV, to have a vehicle brought into compliance with laws the state itself mandates.

13) Does the Connecticut Constitution or common law which authorizes the Attorney General's Office to represent the state in litigation, serving as legal counsel to all state agencies, give it the discretion through statutory authority to use their office to protect acts of corruption by state officials, thereby willfully superseding their

11

obligation to represent the people of the state to protect the public interest and the rights of the people to the fullest extent allowed by law against governmental corruption by ensuring government acts within the letter and spirit of the law?

14) Is the client of an attorney who does not cash, therefore does not consummate his attorney's unauthorized acceptance of a decision his client ordered appealed, still bound by his attorney's unauthorized acceptance in violation of Rule 1.2(a) Scope of Representation of the Connecticut Practice Book as the State's Statewide Grievance Committee has ruled?

(Compl. 57-59.)  In addition, Plaintiff seeks compensatory damages as well as punitive damages in the amount of $4,000,000.00. (Id. at 60.)  The State now moves this Court to dismiss the action for lack of subject matter jurisdiction on the ground that Plaintiff's claims are barred by the Eleventh Amendment and for failure to state a claim on the grounds that Plaintiff's claims are not proper subjects of declaratory relief and that Plaintiff is unable to state a claim for due process because he has already received all the process, through his litigation in the state courts, that he is due.

### A.      Eleventh Amendment

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  The Supreme Court has consistently held that this amendment prohibits a private party from suing a state or one of its agencies or departments in federal court unless Congress unequivocally expresses its intent to abrogate that immunity or a state waives its immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (citing Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S. Ct. 1032, 67 L. Ed. 2d 132 (1981) (per curiam); Alabama v.

Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam)); Edelman v. Jordan,

415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); accord In re Charter Oak Assocs., 361

F.3d 760, 765 (2d Cir. 2004).  This jurisdictional bar applies "whether the relief sought is legal or

equitable." Papasan v. Allain, 478 U.S. 265, 276, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986).

As noted above, the states' Eleventh Amendment immunity is not absolute.  A state may

waive its immunity, however, such a waiver must be "an unequivocal indication that the State

intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh

Amendment." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1, 87 L. Ed. 2d 171, 105

S. Ct. 3142 (1985).  Moreover, Congress may abrogate a state's sovereign immunity by: (1)

"unequivocally express[ing] its intent to abrogate the immunity," and (2) acting "pursuant to a

valid exercise of power." Seminole Tribe v. Florida, 517 U.S. 44, 55, 134 L. Ed. 2d 252, 116 S.

Ct. 1114 (1996).  In Atascadero, the Supreme Court held that "Congress may abrogate the States

constitutionally secured immunity from suit in federal court only by making its intention

unmistakably clear in the language of the statute." 473 U.S. at 242.

Nothing in Plaintiff's Complaint indicates that the State has waived its sovereign

immunity or that Congress has expressed its intent to abrogate the State's immunity in a situation

such as the one at issue here.[4]  Because Plaintiff has not carried his burden of showing that the

Court has subject matter jurisdiction over his suit, see Malik, 82 F.3d at 562, his Complaint is

---

[4]     Plaintiff cites 42 U.S.C. § 7522, governing motor vehicle emission standards, as a potential basis
for this Court's jurisdiction. (See Pl.'s Mem. Opp. Mot. Dismiss 4.)  An examination of the statute,
however, indicates that no private right of action is provided in that section.  Although Congress
did grant the United States the right to bring enforcement actions against offending persons,
dealers or manufacturers in the next two sections, see 42 U.S.C. §§ 7523 and 7524, no right of
action is vested in members of the general public, and §§ 7523 and 7524 do not authorize civil
actions for money damages by individuals against the states.  Accordingly, § 7522 does not confer
jurisdiction in this Court over Plaintiff's action.

dismissed for lack of subject matter jurisdiction.[5]

### B.   Declaratory Judgment

Even if this case were not dismissed on the basis of the State's Eleventh Amendment immunity from suit, Plaintiff's requests for declaratory relief are not proper subjects for a declaratory judgment action, and are therefore dismissed for failure to state a claim.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  The DJA is intended to "minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued," and provides "a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." 10B Charles A Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2751 (3d ed. 2006).  The Supreme Court has held that the "real value of the judicial pronouncement" in a declaratory judgment action "is the

---

[5]        The Eleventh Amendment would not bar a suit for prospective injunctive relief against state officials, as such would fall within the Ex parte Young exception to sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 337, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (although private parties may not seek a "retroactive award which requires the payment of funds from the state treasury," a federal court may, under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), "enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury"). Here, however, Plaintiff is seeking declaratory relief against the state itself and, as discussed in the next section, Plaintiff is not seeking prospective injunctive relief, and therefore the Ex parte Young exception does not apply.

settling of some dispute which affects the behavior of the defendant towards the plaintiff."

Hewitt v. Helms, 482 U.S. 755, 761, 107 S. Ct. 2672, 96 L. Ed. 2d 654 (1987).  As such, a

declaratory judgment action cannot be used "solely to adjudicate [a defendant's] past conduct."

Crown Cork & Seal Co. v. Borden, Inc., 779 F. Supp. 33, 35 (E.D. Pa. 1991).

 An examination of Plaintiff's requests for declaratory relief indicate that all ask the Court

to make a determination regarding, or to adjudicate, past conduct.  Plaintiff does not ask for a

judgment which would settle some dispute and thus affect the future behavior of the defendant

towards the plaintiff.  Because none of Plaintiff's claims present a proper subject for declaratory

relief, they are also dismissed on the ground that they fail to state a claim for which relief can be

granted.

## IV.  CONCLUSION

 Plaintiff has had numerous opportunities to litigate his claims.  His claims have resulted

in a settlement between Ralph's and the DMV, money damages to Plaintiff, a reopening of the

DMV proceeding and numerous dismissals, both on the merits and for procedural and

jurisdictional reasons.  Plaintiff remains dissatisfied with the relief provided to him by the State,

however, he has repeatedly failed to exercise his right to appeal various decisions and/or appeal

them within the required time frame.  This Court recognizes Plaintiff's frustrations and regrets

the unpleasant experience that arose out of Plaintiff's 1988 purchase of a defective pickup truck.

For the reasons set forth above, however, this Court does not have jurisdiction to hear the case.

Furthermore, Plaintiff has failed to set forth a claim for which relief can be granted.  Plaintiff

spends a large portion of his brief attacking the prior decisions, however, this Court is not a

proper forum in which to attack the final judgments of the State courts or State agencies.

15

Accordingly, Defendant's Motion to Dismiss [Doc. No. 7] is **granted**.  The clerk shall close the case.

      SO ORDERED.

                Dated at New Haven, Connecticut, November  27 , 2006.


                                /s/
                            Peter C. Dorsey, U.S. District Judge
                              District of Connecticut